UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MID-GULF SHIPPING COMPANY INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-390** |
| **ENERGY SUBSEA LLC** | **SECTION I** |

### ORDER & REASONS

Before the Court is plaintiff Mid-Gulf Shipping Company Inc.'s ("Mid-Gulf Shipping") motion[1] for a default judgment against defendant Energy Subsea LLC ("Energy Subsea"). Mid-Gulf Shipping requests that the Court enter a judgment in its favor and against Energy Subsea in the amount of $863,950.00.[2] Mid-Gulf Shipping also requests post-judgment interest at the statutory rate until the judgment is paid in full.[3] For the following reasons, the motion is granted.

### I.

Mid-Gulf Shipping alleges that on August 1, 2015, it entered into a business relationship with Energy Subsea whereby Mid-Gulf Shipping would lease remotely-operated vehicles ("ROVs") and related equipment to Energy Subsea pursuant to the parties' Master Agreement ("MA").[4] The MA provides that the details for any

---

[1] R. Doc. No. 11.
[2] *Id.* at 1.
[3] Mid-Gulf Shipping no longer seeks contractual interest on the principal amount owed by Energy Subsea or attorneys' fees. *Compare* R. Doc. No. 1, at 7–8 ¶ 29, *with* R. Doc. No. 11-1, at 6; R. Doc. No. 11-2, at 5 ¶ 14.
[4] R. Doc. No. 1, at 3 ¶ 9; *see* R. Doc. No. 11-3.

particular lease are to be set forth in a separate ROV Charter Order, though any such leases will remain subject to the general terms and conditions of the MA.[5]

On August 1, 2015, Mid-Gulf Shipping and Energy Subsea also entered into an ROV Charter Order ("Mohawk Charter Order") for the lease of Mid-Gulf Shipping's Mohawk 10 ROV and associated equipment to Energy Subsea.[6] The Mohawk Charter Order provided that Energy Subsea would pay Mid-Gulf Shipping "$7,000.00 per month plus $1,000.00 per day when on hire."[7] The Mohawk 10 ROV and associated equipment were delivered to Energy Subsea on or about August 20, 2015.[8]

The complaint also alleges, and the affidavit of Eric Toft ("Toft"), the President of Mid-Gulf Shipping, asserts, that Mid-Gulf Shipping allowed Energy Subsea to store certain other equipment owned by it at Energy Subsea's facilities for deployment readiness purposes, including the Outland 163 ROV system, the Outland 132 ROV system, and the Searay ROV system.[9] These ROVs were delivered to Energy Subsea in 2018.[10] The parties agreed that under no circumstances was the equipment to be utilized or moved by Energy Subsea without specific prior authority from Mid-Gulf Shipping.[11]

---

[5] R. Doc. No. 1, at 3 ¶ 9; R. Doc. No. 11-3, at 2.
[6] R. Doc. No. 11-4, at 2.
[7] *Id.*
[8] R. Doc. No. 1, at 4 ¶ 12; R. Doc. No. 11-2, at 3 ¶ 7.
[9] R. Doc. No. 1, at 4 ¶ 13; R. Doc. No. 11-2, at 3 ¶ 8.
[10] R. Doc. No. 1, at 4 ¶ 13; R. Doc. No. 11-2, at 3 ¶ 8.
[11] R. Doc. No. 1, at 4 ¶ 13; R. Doc. No. 11-2, at 3 ¶ 8. Neither the complaint nor Toft's affidavit indicates whether this was a verbal agreement or memorialized in writing.

Since May 2016, Energy Subsea has allegedly failed to make full payments for the lease of the Mohawk 10 ROV and associated equipment as required by the MA and Mohawk Charter Order.[12] Energy Subsea owes an outstanding principal balance of $307,950.00 to Mid-Gulf Shipping for the lease period from May 2016 to December 2019, as evidenced by twenty-two invoices issued between July 21, 2016 and December 31, 2019 for the lease of the Mohawk 10 ROV and associated equipment.[13]

In addition, Energy Subsea has allegedly failed to pay daily on-hire charges pursuant to the Mohawk Charter Order for periods during 2019 and 2020 when Energy Subsea deployed the Mohawk 10 ROV, without providing Mid-Gulf Shipping with forty-eight hours' notice as required by the Mohawk Charter Order.[14] Energy Subsea owes an outstanding principal balance of $126,000.00 to Mid-Gulf Shipping for these unpaid daily on-hire charges, as evidenced by Invoice Nos. I202023-48 and I202023-52, both dated February 3, 2020.[15]

---

[12] R. Doc. No. 1, at 4–5 ¶ 14. Toft's affidavit asserts that Energy Subsea has failed to make full payments for the lease of the Mohawk 10 ROV and associated equipment since October 2017. R. Doc. No. 11-2, at 3 ¶ 9. However, Toft also asserts, consistent with the complaint, that an outstanding principal balance of $307,950.00 is owed by Energy Subsea to Mid-Gulf Shipping for the lease period from May 2016 through December 2019. *Id.*

[13] R. Doc. No. 11-2, at 3 ¶ 9; R. Doc. No. 11-5.

[14] R. Doc. No. 1, at 4–5 ¶ 14; R. Doc. No. 11-4, at 3; R. Doc. No. 11-2, at 3–4 ¶ 10. The Mohawk Charter Order provides that "[s]hould Lessee, in the scope of its operation of the Leased ROV, require the removal of same from the commerce of the United States, it shall notify the Lessor thereof . . . no less than forty-eight (48) hours prior to the proposed movement or transport of the Leased ROV." R. Doc. No. 11-4, at 3. The complaint alleges, and Toft asserts, that Energy Subsea deployed the Mohawk 10 ROV on the M/V Farland and at other locations. R. Doc. No. 1, at 4–5 ¶ 14; R. Doc. No. 11-2, at 3–4 ¶ 10. The Court infers that the M/V Farland and these "other locations" were outside of the United States.

[15] R. Doc. No. 1, at 4–5 ¶ 14; R. Doc. No. 11-2, at 3–4 ¶ 10; R. Doc. No. 11-6.

Mid-Gulf Shipping has also made multiple written demands to Energy Subsea for the return of its equipment.[16] Nonetheless, Energy Subsea, to date, has not returned the Mohawk 10 ROV system, Outland 163 ROV system, Outland 132 ROV system, Searay ROV system, or any of the other equipment that Mid-Gulf Shipping allowed Energy Subsea to store at its facilities.[17] The complaint alleges that, upon information and belief, Energy Subsea has substantially altered the Mohawk 10 ROV system, and that parts of the Mohawk 10 ROV system are currently in Mobile, Alabama; Singapore; and aboard the M/V Farland, which Energy Subsea previously had under charter.[18] Energy Subsea has also allegedly represented itself to be the owner of the Mohawk 10 ROV system, the Outland 163 ROV system, "and perhaps other equipment owned by [Mid-Gulf Shipping] which remains aboard the M/V Farland," in order to illegally collateralize Mid-Gulf Shipping's property.[19] Mid-Gulf Shipping's complaint alleges that such actions constitute conversion in violation of both general maritime law and Louisiana law.[20]

Mid-Gulf Shipping issued Energy Subsea Invoice No. I2020130-52, dated January 30, 2020, in the amount of $350,000.00 for the loss and replacement of the Mohawk 10 ROV system, and Invoice No. I2020130-52/2, dated January 30, 2020, in the amount of $80,000.00 for the loss and replacement of the Outland 132 ROV

---

[16] R. Doc. No. 1, at 5 ¶ 16; R. Doc. No. 11-2, at 4 ¶ 11.
[17] R. Doc. No. 1, at 5 ¶ 16; R. Doc. No. 11-2, at 4 ¶ 11.
[18] R. Doc. No. 1, at 5 ¶ 17.
[19] R. Doc. No. 1, at 6 ¶ 19.
[20] R. Doc. No. 1, at 8 ¶¶ 30–33.

system, the Outland 163 ROV system, and the Searay ROV system.[21] Energy Subsea has failed to pay either of these invoices.[22]

Mid-Gulf Shipping alleges that Energy Subsea's failure to pay the lease and on-hire payments for the Mohawk 10 ROV and associated equipment pursuant to the MA and Mohawk Charter Order constitutes a breach of contract.[23] Mid-Gulf Shipping further alleges that Energy Subsea breached the MA and Mohawk Charter Order by failing to return the Mohawk 10 ROV system to Mid-Gulf Shipping "in the same good and operable condition as when received";[24] by failing to keep the Mohawk 10 ROV system "free and clear of all cargo, mechanics' and other liens, privileges and encumbrances of whatever nature";[25] and by representing itself to be the owner of the Mohawk 10 ROV system and illegally collateralizing Mid-Gulf Shipping's property without any authority in one or more financial transactions to which Mid-Gulf Shipping is not a party.[26]

As reflected in Mid-Gulf Shipping's final written demand to Energy Subsea dated February 3, 2020, Energy Subsea owes Mid-Gulf Shipping a total principal amount of $863,950.00, which consists of: $307,950.00 for unpaid lease payments for the Mohawk 10 ROV system for the period from May 2016 to December 2019;

---

[21] R. Doc. No. 11-2, at 4 ¶ 12; R. Doc. Nos. 11-7 & 11-8.
[22] R. Doc. No. 11-2, at 4 ¶ 12.
[23] R. Doc. No. 1, at 7 ¶ 25. Mid-Gulf Shipping does not specify **in its complaint** whether Louisiana law or general maritime law applies to its breach of contract claim.
[24] *Id.* at 7 ¶ 26; *see* R. Doc. No. 11-3, at 2 ¶ 4.
[25] R. Doc. No. 1, at 7 ¶ 27; *see* R. Doc. No. 11-3, at 6 ¶ 7.
[26] R. Doc. No. 1, at 7 ¶ 27. The MA provides that "[t]itle to the Leased ROV shall at all times remain with Lessor." R. Doc. No. 11-3, at 6 ¶ 7.

$126,000 for unpaid on-hire charges for the Mohawk 10 ROV system for the period from September 2019 to January 2020; $350,000.00 for the loss and replacement of the Mohawk 10 ROV system; and $80,000.00 for the loss and replacement of the Outland 132 ROV system, the Outland 163 ROV system, and the Searay ROV system.[27]

## II.

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter a default judgment against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period. Fed. R. Civ. P. 55(b). A plaintiff who seeks a default judgment against an unresponsive defendant must proceed with a two-step process.

First, the plaintiff must petition the clerk for an entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Trahan v. PLC Fin., Inc.*, No. 18-859, 2018 WL 10758657, at *1 (E.D. La. Mar. 29, 2018) (Barbier, J.) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986)) (internal quotation marks omitted). Before the clerk may enter the default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Beyond that requirement, the entry of default is largely mechanical.

After the clerk has entered default, the plaintiff may move for default judgment under Federal Rule of Civil Procedure 55(b). *Meyer v. Bayles*, 559 F. App'x

---

[27] R. Doc. No. 11-2, at 4–5 ¶ 13; R. Doc. No. 11-9.

6

312, 313 (5th Cir. 2014). At this point, "the court must accept the well-pleaded factual allegations in the plaintiff's complaint." *Id.* (citing *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("In that context, the court deems the plaintiff's well-pleaded factual allegations admitted.")). At the same time, the court does not hold the defaulting defendant "to [have] admitt[ed] facts that are not well-pleaded or to [have] admitt[ed] conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (internal quotation marks and citation omitted). The default judgment should not be entered unless the judgment is "'supported by well-pleaded allegations' and . . . ha[s] 'a sufficient basis in the pleadings.'" *Id.* at 498 (quoting *Nishimatsu*, 515 F.2d at 1206).

If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the clerk may enter a default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).[28] No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). "Generally, the entry of default judgment is committed to the discretion of the district judge." *Ameser v. Nordstrom, Inc.*, 442 F. App'x 967, 969 (5th Cir. 2011) (internal quotation marks and citation omitted).

---

[28] As discussed, *infra*, Mid-Gulf Shipping requests damages for a sum certain and, therefore, it could have requested that the clerk, rather than the Court, enter a default judgment against Energy Subsea. *See* Fed. R. Civ. P. 55(b)(1). Because the clerk can only enter a default judgment for a sum certain "on the plaintiff's request," and Mid-Gulf Shipping failed to make such a request, the Court, rather than the clerk, will enter the default judgment. *See id.*; R. Doc. No. 11-1, at 7.

7

The court is entitled to consider several factors when determining whether to enter a default judgment, including, "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### III.

Energy Subsea was served with a summons and the complaint on February 6, 2020, and its responsive pleadings were due February 27, 2020.[29] As of this date, Energy Subsea has yet to file responsive pleadings or appear in this case. On April 17, 2020, the Clerk of Court issued an entry of default against Energy Subsea for failure to plead or otherwise defend itself.[30] On May 15, 2020, Mid-Gulf Shipping moved for a default judgment;[31] to date Energy Subsea has not filed a response. The Court must therefore determine whether, accepting the well-pleaded factual allegations in the complaint as true, Mid-Gulf Shipping is entitled to a judgment against Energy Subsea for $863,950.00, in addition to an award of post-judgment interest at the statutory rate until the judgment is paid in full.

Although there is a basis in the pleadings for Mid-Gulf Shipping's breach of contract and conversion claims, Mid-Gulf Shipping did not brief the legal specifics of

---

[29] *See* R. Doc. No. 4.
[30] R. Doc. No. 10.
[31] R. Doc. No. 11.

8

its claims in its motion for default judgment. The Court ordered Mid-Gulf Shipping to file a brief addressing what law should apply to its claims and explaining how the complaint's factual allegations satisfy the essential elements of its claims for relief.[32]

Mid-Gulf Shipping's supplemental brief asserts that, pursuant to the MA's choice-of-law provision, general maritime law governs the breach of contract claim, and it outlines how Mid-Gulf Shipping has sufficiently pled the essential elements of that claim.[33] The Court agrees that Mid-Gulf Shipping's factual allegations establish a breach of contract claim against Energy Subsea. "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). "The elements for breach of contract in maritime . . . [cases are]: (1) contract; (2) breach of that contract; and (3) damages." *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016) (Feldman, J.) (citing 17A Am. Jur. 2d Contracts § 702 (2016)). Taking the complaint's well-pleaded factual allegations as true, all of these elements are satisfied with respect to Mid-Gulf Shipping's breach of contract claim as set forth above.

Mid-Gulf Shipping also explains in its supplemental brief how it has sufficiently pled a claim for conversion regardless of whether general maritime law, Louisiana law, or Alabama law applies, as all three jurisdictions require the same or

---

[32] *See* R. Doc. No. 12.
[33] R. Doc. No. 13, at 2.

9

similar elements to establish a conversion claim.[34] The Court agrees. "In order to prevail on a claim of conversion under Louisiana law, the plaintiff must prove that (1) he owned or had the right to possess; (2) the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) the defendant's use constituted a wrongful taking." *Richardson v. Cella*, 1 F. Supp. 3d 484, 499–500 (E.D. La. 2014) (Fallon, J.); *Goodpasture, Inc. v. M/V Pollux*, 602 F.2d 84, 87 (5th Cir. 1979) (applying the elements of a common law conversion claim to a conversion claim arising under general maritime law); *Kubek v. Jones*, No. 04-29, 2011 WL 4542894, at *2 (M.D. Ala. Sept. 30, 2011) (holding that to prevail on a claim of conversion under Alabama common law, a plaintiff must establish that there was "(1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property").

Mid-Gulf Shipping's factual allegations satisfy the elements of a claim for conversion under the laws of all three jurisdictions. The ROV systems were Mid-Gulf Shipping's property. Energy Subsea failed to return Mid-Gulf Shipping's property upon its demand and altered parts of the Mohawk 10 ROV, which is inconsistent with Mid-Gulf Shipping's right of ownership. Energy Subsea also wrongfully interfered

---

[34] R. Doc. No. 13, at 5. Mid-Gulf Shipping notes that the Court could potentially apply the laws of any three of these jurisdictions, as the MA selects general maritime law, Mid-Gulf Shipping is based in Louisiana, and Mid-Gulf Shipping's equipment was delivered to Energy Subsea in Alabama. *Id.*

Engaging in a choice-of-law analysis is unnecessary, as the Court "can simply note that [the laws of all three jurisdictions] dovetail to provide the same outcome." *Graves v. BP Am., Inc.*, 568 F.3d 221, 223 (5th Cir. 2009).

with Mid-Gulf Shipping's use of its property by representing to third parties that it was the owner of such property and collateralizing it without Mid-Gulf Shipping's approval.

In summary, the Court finds that a judgment with respect to Mid-Gulf Shipping's breach of contract and conversion claims is supported by the well-pleaded allegations of the complaint and has a sufficient basis in the pleadings. *See Wooten*, 788 F.3d at 498. Accordingly, the Court will enter a default judgment in favor of Mid-Gulf Shipping and against Energy Subsea.

The Court must now "fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *MC Bank & Trust Co. v. Suard Barge Serv., Inc.*, 16-14311, 2017 WL 3991076, at *5 (E.D. La. Sept. 11, 2017) (Vance, J.) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "In ruling on such a motion [for a default judgment], the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Brighton Painting Co.*, 267 F.R.D. 426, 428 (D.D.C. 2010)). With respect to damages, the Court cannot enter a default judgment without a hearing "unless the amount is liquidated or easily computable." *Richardson v. Salvation Army S. Territory, USA*, No. 98-10151, 1998 WL 723820, at *1 (5th Cir. 1998); *see Duncan v. Tangipahoa Parish Council*, No. 08-3840, 2009 WL 2514150, at *1 (E.D. La. Aug. 12, 2009) (Engelhardt, J.) (explaining that "[a] sum is certain when the amount claimed is a liquidated one or is one that is capable of mathematical calculation as, for example, an action on a promissory note").

In support of its motion, Mid-Gulf Shipping submitted twenty-six invoices that establish the demanded amount and a declaration attesting to the amount owed to Mid-Gulf Shipping by Energy Subsea.[35] The Court concludes that the amount demanded is a sum certain and that the evidence submitted by Mid-Gulf Shipping reflects the balance owed by Energy Subsea in connection with its breach of the MA and Mohawk Charter Order and its conversion of Mid-Gulf Shipping's property, namely, the Outland 163 ROV system, Outland 132 ROV system, Searay ROV system, and Mohawk 10 ROV system. Mid-Gulf Shipping has provided sufficient evidence to support its claim for $863,950.00 without the need for an evidentiary hearing.

Mid-Gulf Shipping also requests post-judgment interest. "Federal law governs post-judgment interest." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Mid-Gulf Shipping may recover post-judgment interest pursuant to 28 U.S.C. § 1961, which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."

---

[35] *See* R. Doc. Nos. 11-2, 11-5 to 11-8.

**IV.**

After considering Mid-Gulf Shipping's motion and accompanying exhibits, as well as the applicable law, the Court finds that there are no factors that weigh against entering a default judgment against Energy Subsea. Accordingly,

**IT IS ORDERED** that the motion for a default judgment is **GRANTED** and that judgment shall be entered in favor of Mid-Gulf Shipping and against Energy Subsea in the principal amount of $863,950.00 (the "principal amount").

**IT IS FURTHER ORDERED** that Mid-Gulf Shipping shall be awarded post-judgment interest, at the federal statutory rate pursuant to 28 U.S.C. § 1961, on the principal amount from the date of entry of this judgment until paid.

New Orleans, Louisiana, July 13, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**